# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RAVENGRACE MORI EL,     )
             )
    Plaintiff,    )
             )
    v.       )   1:19cv218
             )
NATIONSTAR MORTGAGE, et al.,  )
             )
    Defendants.   )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on Plaintiff's Application for Leave to Proceed In Forma Pauperis (Docket Entry 1), filed in conjunction with her pro se Complaint (Docket Entry 2). The Court will grant Plaintiff's Application (Docket Entry 1) for the limited purpose of recommending dismissal of this action.

## LEGAL BACKGROUND

"The federal in forma pauperis ['IFP'] statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing

[IFP] d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004).

To address this concern, the IFP statute provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or . . . (ii) fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2)(B). Under the latter provision, the Court must dismiss any complaint that "does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

---

[1] Although the Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement

Alternatively, "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256-57 (some internal quotation marks omitted). In determining frivolousness, the Court may "apply common sense." Nasim, 64 F.3d at 954.

Furthermore, federal courts possess limited jurisdiction, such that they may "exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998). No presumption of jurisdiction applies, Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999); instead, federal courts must determine if a valid jurisdictional basis exists and "dismiss the action if no such ground appears," Bulldog Trucking, 147 F.3d at 352; see also Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) ("A federal court has an independent obligation to assess its subject-matter

---

that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint).

jurisdiction . . . ."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Facts supporting jurisdiction must appear in the complaint, Pinkley, 191 F.3d at 399, and the party asserting federal jurisdiction bears the burden of "show[ing] that jurisdiction does, in fact, exist," Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (internal quotation marks omitted). "Article III [constitutional] standing is an issue of subject matter jurisdiction, which relates to the power of this Court to hear a case." Keith Bunch Assocs., LLC v. La-Z-Boy Inc., No. 1:14CV850, 2015 WL 4158760, at *4 (M.D.N.C. July 9, 2015) (unpublished) (Biggs, J.) (citing Beyond Systems, Inc. v . Kraft Foods, Inc., 777 F.3d 712, 715-16 (4th Cir. 2015)). The Court may consider subject-matter jurisdiction in assessing frivolity under Section 1915(e)(2)(B)(i). See Cummings v. Rahmati, No. 1:17CV196, 2017 WL 1194364, at *1 (M.D.N.C. Mar. 30, 2017), recommendation adopted, slip op. (M.D.N.C. Apr. 20, 2017) (Biggs, J.).

## ANALYSIS

Plaintiff initiated this action against eight defendants: (1) "Nationstar Mortgage," (2) "Bank of America, N.A. LLC" ("Bank of America"), (3) "H.S.B.C., U.S.A., N.A., as Trustee for Ace Securities Corporation" ("HSBC Bank, Trustee"), (4) "HSBC Bank USA,

N.A." ("HSBC Bank"),[2] (5) "Issuing Entity Trust Ace Securities Corporation Home Equity Loan Trust, Series 2006-CW1" ("Ace Securities"), (6) "Ray M. Warner" ("Defendant Warner"), (7) "Christy Morse" ("Defendant Morse"), and (8) "Does 1-100 Inclusive." (Docket Entry 2 at 1.) Plaintiff's Complaint alleges that Defendants violated the Fair Credit Extension Uniformity Act, the Fair Debt Collection Practices Act, and federal racketeering laws. (See id. at 1, 6, 16, 17, 32.) The Complaint also asserts the following related state-law claims: "unjust enrichment" (id. at 1, 15), "negligent and intentional infliction of emotional distress" (id. at 1, 32), "lack of standing/wrongful foreclosure" (id. at 19), "quiet title" (id. at 22), "slander of title" (id. at 23), "fraud in the concealment" (id. at 24), "fraud in the inducement" (id. at 26), "unconscionable contract" (id. at 28), "breach of contract" (id. at 30), and "rescission" (id. at 31). Plaintiff has requested "[a] declaratory judgment, injunctive and equitable relief, and [ ] compensatory, special, general, and punitive damages." (Id. at 7.)

---

[2] Plaintiff refers to HSBC Bank as two separate defendants in the caption, first as "Trustee for Ace Securities" and second in its own capacity. (See Docket Entry 2 at 1.) The body of the Complaint, however, does not make clear which iteration bears liability for any particular claim. (See id. at 2, 5, 8, 13, 28, 33.) Because this Memorandum Opinion will recommend dismissal of the Complaint in its entirety, this ambiguity warrants no further discussion.

The Complaint alleges that, "[a]t least since March 15, 2006, [ ]Defendants have engaged in a scheme where by [sic] they issue [h]ome [l]oans to consumers and then seek to collect the amounts allegedly due to them which are not legally due to them." (Id. at 1-2.)[3]  More specifically, the Complaint describes the purchase of a piece of real property, as well as events that occurred during and following a related "securitization process" (id. at 7), resulting in Defendant Nationstar Mortgage selling an account to other entities, but

> still servic[ing] the account by sending out bills and accepting payment.  However, [Defendant Nationstar Mortgage] has given up ownership rights . . . because [it] intentionally sold and relinquished [its] beneficial interest in [its] accounts.  Despite this fact, [Defendant Nationstar Mortgage] . . . ha[s] continued to pursue, along with [its] affiliates . . . , collection lawsuits against Plaintiff to recover the obligations allegedly owed on [the] accounts.

(Id. at 5-6.)  The Complaint "disputes Defendants' superior colorable claim to legal title and equitable title of the . . . [real p]roperty in question" (id. at 7) and asserts that Plaintiff "is the owner of the property by Deed of Trust" (id. (internal parenthetical citation omitted)).

Additionally, the Complaint further describes Defendants' "home loan securitization and debt collection scheme" (id.), as follows:

---

[3] For legibility reasons, this Memorandum Opinion omits all-cap and bold font in all quotations of Plaintiff's materials.

> In order to earn securitization income from the [h]ome [l]oan securitization, [Defendant Nationstar Mortgage] sold its [h]ome [l]oan receivables to [Defendant Ace Securities].
>
> The [h]ome [l]oan securitization process is set forth in the amended and restated Pooling and Servicing Agreement (the "PSA") between [Defendant Nationstar Mortgage], as seller, and [Defendant HSBC Bank], trustee of [Defendant Ace Securities].

(Id. at 7-8.) According to the Complaint, Plaintiff obtained a "Forensic Chain of Title Securitization Analysis completed by a qualified expert[, Certified Forensic Loan Auditors, LLC,] to verify the claims of this [C]omplaint." (Id. at 11; see also Docket Entry 2-4 at 1-4.) Based upon that analysis, the Complaint asserts the following:

1. "Plaintiff pledged a Constructive Deed of Trust granting Legal Title to Accommodate [Defendant Nationstar Mortgage] to file against Plaintiff's Superior Claim to Title filed in the Official Records of the Guilford County Recorder's Office on March 20, 2006 . . . ." (Docket Entry 2 at 11.)

2. "On June 21, 2012, MERS [Mortgage Recording Electronic System[4]] recorded an Assignment of Deed of Trust in the Guilford County Recorder's Office . . . . The Assignment was signed by

---

[4] "MERS is a corporation established in the mid-1990s [that] eliminate[d] the need to record assignments and related documents in county property recorder's offices. . . . MERS created a computer database that tracks servicing and ownership rights of mortgage loans." Powell v. Countrywide Bank, Civ. No. 16-1201, 2016 WL 5815884, at *1, n.2 (D. Md. Oct. 4, 2016) (unpublished) (internal citations omitted).

Laresa Post, as Assistant Secretary of MERS.  Laresa Post is actually employed as [a]n AV Production Specialist 11 since 2007 [to the] present by Bank of America.  The notarization was signed by [Defendant] Morse who has committed fraud upon the court and notarization fraud by attesting to [an individual's] employment as a MERS Assistant Secretary knowing full well [that individual] was actually employed by Bank of America."  (Id. at 12.)

3.    "The Note was sold, transferred, assigned and securitized into [Defendant Ace Securities] with a Closing Date of July 25, 2006."  (Id.)

4.    "The June 21, 2012 assignment purports to assign Plaintiff's Deed of Trust to [Defendant HSBC Bank] as Trustee for [Defendant Ace Securities] having sold the Note to [Defendant Ace Securities] on or before July 25, 2006."  (Id. at 13.)

5.    "The June 21, 2012 assignment was fraudulently executed by Larisa Post as Assistant Secretary of MERS without disclosure of her employment as an agent for the Assignee."  (Id.)

6.    "The June 21, 2012 assignment of the Deed of Trust is an illegal unilateral transfer of real property . . . [and] is void."  (Id.)

7.    "On August 19, 2013, an Assignment of Deed of Trust was filed with the Guilford County Recorder's Office . . . .  The notary was [Defendant] Warner who attest[ed] [that] [an individual] [w]as an Assistant Vice President of Bank of America, N.A. when

[the individual] actually [was] employed by notorious foreclosure mill Core Logic . . . . [Defendant] Warner has committed notarization fraud and fraud upon the court." (Id. at 13-14) (internal quotation marks omitted).)

8.  "The August 19, 2013 Assignment of Deed of Trust is dependent upon the void June 21, 2012 assignment of the Deed of Trust and is thus, void." (Id. at 14.)

9.  "There are no recorded assignments of Deed of Trust to the Depositor, [Defendant Ace Securities]." (Id.)

10.  "[Defendant Nationstar Mortgage] (or an assignee of [Defendant Nationstar Mortgage]) commenced a collection action against Plaintiff by filing a notice of default in the Guilford County, North Carolina Clerk's Office." (Id. at 14-15.)

11.  "Plaintiff has continuously received account statements from [Defendant Nationstar Mortgage] . . . and Plaintiff has always believed at the relevant times described in this petition that [Defendant Nationstar Mortgage] was the beneficial interest holder of the debt, but upon learning of the probable securitization of her [h]ome [l]oans, as alleged herein, Plaintiff no longer believes that is the case." (Id. at 15.)

For the reasons that follow, the Court should dismiss this action as frivolous or, alternatively, should dismiss the Complaint's federal claims for failure to state a claim and should decline to exercise jurisdiction over the Complaint's state claims.

## I. Frivolousness

### A. Lack of Standing

The Court should dismiss this action as frivolous due to Plaintiff's lack of standing. Although the Complaint describes Plaintiff as "the owner of the [subject real] property by Deed of Trust" (id. at 7), her name does not appear on the Deed of Trust (see Docket Entry 2-1 at 1-15) or, for that matter, on any of the Complaint's other exhibits (see Docket Entries 2-2, 2-3, 2-4, 2-5). In that regard, following Plaintiff's filing of a motion for temporary restraining order (see Docket Entry 4), this Court (per United States District Judge Loretta C. Biggs) denied relief, observing: "Plaintiff's name does not appear in the [Deed of Trust] as the borrower or otherwise. Nor do any of the other exhibits attached to the Complaint referencing the property include Plaintiff's name. . . . Thus there are no documents before the Court that support Plaintiff's allegations of ownership of the subject property." (Docket Entry 9 at 2-3.)[5]

Moreover, even if Plaintiff could establish some link to the subject real property, the Court should still dismiss this action for lack of standing. Constitutional standing "contains three elements - (1) an injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) the likelihood that

_____

[5] Since that ruling, Plaintiff has not filed any additional exhibits showing ownership. (See Docket Entries dated Feb. 28, 2019, to present.)

a favorable decision will redress the injury." Tobias v. Nationstar Mortg., LLC, No. 1:17CV486, 2018 WL 264103, at *2 (M.D.N.C Jan. 2, 2018) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Because the securitization process creates a "separate contract," Powell v. Countrywide Bank, Civ. No. 16-1201, 2016 WL 5815884, at *4 (D. Md. Oct. 4, 2016) (unpublished), courts "ha[ve] consistently held that plaintiffs lack standing to challenge the propriety of the assignment of a mortgage loan." Id. Notably, "[i]n the consumer lending context, a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Id. (quoting Wolf v. Fed. Nat'l Mortg. Ass'n, 512 F. App'x. 336, 342 (4th Cir. 2013)). Plaintiff has not asserted that she was a party to the PSA or later assignment of the mortgage (the "Assignment"). (See Docket Entry 2 at 1-36.) Therefore, Plaintiff lacks standing to assert any claim challenging the PSA or Assignment in this Court.

The analysis remains the same if the Court "look[s] to state law to aid in the definition of the injury a plaintiff may assert to meet Article III requirements," Tobias, 2018 WL 264103, at *2. In that regard, "[u]nder North Carolina law, only a party to a contract or an intended third-party beneficiary of the contract may bring a claim under the contract." Id. Although the Complaint identifies Plaintiff as a party to the Deed of Trust (see Docket

Entry 2 at 11), it does not describe her as a party to or a third-party beneficiary of any other transaction, such as the PSA or Assignment (see id. at 1-36). Accordingly, "the only circumstances under which [Plaintiff] would have standing to challenge [the PSA or Assignment] would be upon a showing of prejudice, i.e., that [she] face[s] the potential for double liability if the [PSA or Assignment] stands." Tobias, 2018 WL 264103, at *3 (internal brackets and quotation marks omitted). The Complaint does not allege any such prejudice. (See Docket Entry 2 at 1-36.)

In sum, the Complaint lacks facts to support Plaintiff's standing to pursue her claims in this Court.

B. Improper Scheme/Fraudulent Conduct

As detailed above, the Complaint, at its core, attempts to show an improper "home loan securitization and debt collection scheme," in order to allow Plaintiff, as "homeowner, [to] dispute[] Defendants' superior colorable claim to legal and equitable title of the . . . [p]roperty in question." (Id. at 7.) Because the Complaint's basic theory rests on an unsound foundation, the Court should dismiss this action as frivolous.

To begin, contrary to Plaintiff's assertions, "[a]s a matter of law, securitization alone does not render a note or deed of trust unenforceable and does not alter a borrower's obligation to pay back his or her loan." Young v. Ditech Fin., LLC, Civ. Case No. 16-3986, 2017 WL 3066198, at *7 (D. Md. July 19, 2017)

(unpublished) (internal citations omitted); accord Powell, 2016 WL 5815884, at *4. Rather, "[s]ecuritization is the process of converting assets - typically a group of illiquid assets, such as mortgages - into negotiable securities for resale in the financial market." Suggs v. M & T Bank, 230 F. Supp. 3d 458, 462 (E.D. Va.), aff'd, 694 F. App'x 180 (4th Cir. 2017). Therefore, it "merely creates a separate contract, distinct from [Plaintiff's] debt obligations under the note and does not change the relationship of the parties in any way." Young, 2017 WL 3066198, at *7. More importantly, securitization is "not some sort of illicit scheme that taints the underlying debt." Id.

Nor can Plaintiff make out any type of claim based on her allegations that two individuals, Defendant Warner and Defendant Morse, "have committed notarization fraud and clouded the title of Plaintiff's property." (Docket Entry 2 at 21.) These allegations rely on the premise that Defendants Warner and Morse notarized the signatures of individuals as "Assistant Secretary" and "Vice President" for MERS and Bank of America when, in fact, those individuals served in other capacities at other entities. (See id. at 12-14.)[6] Other plaintiffs similarly have "contend[ed] that

---

[6] The Complaint makes related allegations against "Laresa Post" (also identified as "Larisa Post"), but fails to include her in the caption. (Compare Docket Entry 2 at 12, 13, with id. at 1.) Therefore, "Laresa Post" (or "Larisa Post") does not qualify as a defendant. See Fed. R. Civ. P. 10(a) (requiring a complaint's caption to "name all the parties"); see also Doe v. North State Aviation, LLC, No. 1:17CV346, 2017 WL 1900290, at *1 (M.D.N.C. May 9, 2017) (unpublished) (refusing to address party not identified in

[such] intervening assignments [were] invalid because the individual who 'robo-signed' the assignment on behalf of MERS . . . was instead an employee of Bank of America," Powell, 2016 WL 5815884, at *4; however, "[a]s a matter of convenience, MERS typically allows employees of mortgage servicers and law firms to enter their names on MERS website, which designates the employees as certifying officers of MERS with the job title of assistant secretary or vice president," id. Accordingly, just as courts have found that the securitization process does not amount to fraud, "[c]ourts have held that this [MERS] practice does not give rise to a legally cognizable claim." Id.

Simply put, "as a matter of law, the securitization process cannot have harmed Plaintiff[], or, more pointedly, amounted to fraud." Id. The Complaint's reliance on such discredited theories renders this action frivolous.

C. Certified Forensic Loan Auditors

It appears that, like other litigants, Plaintiff obtained the Complaint and supporting report via the Internet from Certified Forensic Loan Auditors, LLC. See Suggs, 230 F. Supp. 3d at 462-63 n.4; English v. Ryland Mortg. Co., Civ. Case No. 16-03675, 2016 WL 6820365, at *1 n.1 (D. Md. Nov. 16, 2016) (unpublished). Courts have voiced "concern over the dubious nature of such reports

caption). In any event, any claim against "Laresa Post" (or "Larisa Post") obviously fails for the same reasons as do the claims against Defendants Warner and Morse.

prepared by Certified Forensic Loan Auditors, LLC," <u>Leadbeater v. JP Morgan Chase, N.A.</u>, Civ. No. 16-7655, 2017 WL 4790384, at *4, n.9 (D.N.J. Oct. 24, 2017) (unpublished) (internal quotation marks omitted). Moreover, "[t]he [Federal Trade Commission] has recently warned consumers to be wary of forensic mortgage loan audits." <u>Id.</u> As a result of Plaintiff's use of a form Complaint and her reliance upon a "Forensic Chain of Title Securitization Analysis" (Docket Entry 2 at 11), "[her] Complaint contains few facts, many legal conclusions, and misguided legal theories," <u>Suggs</u>, 230 F. Supp. 3d at 461. Those considerations also warrant dismissal for frivolousness.[7]

---

[7] For example, Plaintiff has purported to assert a cause of action under Pennsylvania statutes known as the "Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. Sections 2270.1-2210.6" against Defendant Nationstar Mortgage (Docket Entry 2 at 16). The Complaint provides no factual matter by which these statutes conceivably could apply, particularly given the allegations about the citizenship of Plaintiff and Defendant Nationstar Mortgage. (<u>See</u> <u>id.</u> at 2 (describing Plaintiff as resident of North Carolina and Defendant Nationstar Mortgage as conducting business in North Carolina and subject to service in Texas).) "Presumably, the inclusion of [this claim] stems from the fact that [Plaintiff] likely downloaded her [C]omplaint from the [I]nternet." <u>Suggs</u>, 230 F. Supp. 3d at 462 n.1; <u>see also</u> <u>Brown v. Citibank, S.D., N.A.</u>, No. 5:06CV123, 2006 WL 8438793, at *2 (E.D.N.C. Oct. 25, 2006) (unpublished) (finding that FCEUA did not apply where "the [p]laintiff [wa]s not a Pennsylvania consumer protected by these statutes and defendants [were] not Pennsylvania creditors subject to these statutes").

## II. Failure to State a Claim

### A. FDCPA Claims

The Complaint alleges that all Defendants[8] violated the "Fair Debt Collection Practices Act" (the "FDCPA"), codified at "15 U.S.C. Sections 1692-1692p," in that

> [e]ach of said defendants [Defendant Nationstar Mortgage and Defendant Ace Securities], at times relevant hereto, was a person who used an instrumentality of interstate commerce or the mails in a business the principal purpose of which was the collection of debts, who regularly collected or attempted to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.
>
> . . . .
>
> [Defendant Nationstar Mortgage] and [Defendant Ace Securities] . . . violated FDCPA by using false, deceptive, and/or misleading representations and/or means in connection with the collection of the [Defendant Nationstar Mortgage] account obligation.
>
> Said defendants violated FDCPA by falsely representing the character, amount, and/or legal status of the [Defendant Nationstar Mortgage] account obligation.
>
> Said defendants violated FDCPA by using a false representation or deceptive means to attempt to collect the [Defendant Nationstar Mortgage] account obligation.
>
> Said defendants violated FDCPA by attempting to collect an amount (including interest, fees and charges) not expressly authorized by any agreement creating the

---

[8] Although this claim nominally arises "against all Defendants" (Docket Entry 2 at 17), it contains only allegations against Defendant Nationstar Mortgage and Defendant Ace Securities (see id. at 18-19). To the extent the Complaint purports to state a claim against any other Defendant, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678.

> [Defendant Nationstar Mortgage] account obligation or permitted by law.

(Docket Entry 2 at 18-19.)  This claim fails as a matter of law.

To begin, while "the FDCPA regulates the conduct of 'debt collectors,' it generally does not apply to 'creditors.'" McCrimmon v. Mariner Fin. N.C., Inc., 154 F. Supp. 3d 256, 258 (M.D.N.C. Jan. 5, 2016).  More specifically, "the FDCPA limits its reach to those collecting debts of another and does not restrict the activities of creditors seeking to collect their own debts." Fraser v. Aames Funding Corp., No. 16CV448, 2017 WL 564727, at *2 (E.D.N.Y. Jan. 24, 2017) (unpublished), recommendation adopted, Fraser v. Deutsche Bank Nat. Trust Co., No. 16CV448, 2017 WL 563972, at *1 (E.D.N.Y. Feb. 10, 2017).  Further, "[t]he term 'debt collector' expressly excludes 'persons collecting or attempting to collect any debt owed to the extent such activity concerns a debt which was not in default at the time it was obtained by such person.'" Fletcher v. Homecomings Fin. LLC, No. 1:08CV393, 2010 WL 1665265, at *2 (M.D.N.C. Apr. 22, 2010) (unpublished) (quoting 15 U.S.C. § 1692a(6)(F) (internal brackets and ellipses omitted)).

Accordingly, "a mortgage servicing company such as Defendant [Nationstar Mortgage] is statutorily exempt from liability under the FDCPA as long as the debt was not in default when it was assigned to the mortgage servicing company." Id.  In this regard, the Complaint alleges that Defendant Nationstar Mortgage not only "is the servicer of Plaintiff's loan" (Docket Entry 2 at 2), but

also was the initial servicer of her loan (see id. at 11).
Therefore, based on the allegations of the Complaint, Defendant
Nationstar Mortgage "act[ed] as a creditor by trying to collect the
Note and Mortgage it was assigned while the loan was not in
default," Fraser, 2017 WL 564727, at *5.

Finally, the Complaint states that Defendant Ace Securities
obtained the loan in the securitization process and thereafter
"underwr[ote] a bond offering" (Docket Entry 2 at 5); in other
words, the Complaint's allegations recognize that Defendant Ace
Securities participated in a totally separate "securitization
scenario" (id.). "Thus, [Defendant Ace Securities is] not [a] debt
collector[] attempting to collect the debt of another, and
therefore, the FDCPA does not apply here." Fraser, 2017 WL 564727,
at *5.

In sum, the Complaint fails to state a claim under the FDCPA.

B. RICO/Racketeering Claims

Plaintiff's only other federal claim involves alleged
violations of the Racketeer Influenced and Corrupt Organizations
Act ("RICO"), 18 U.S.C. §§ 1961 et seq., more specifically against
"the enterprise," which consists of Defendant Nationstar Mortgage,
Defendant Ace Securities, Defendant HSBC Bank, Trustee, and
Defendant John Does 1-100 Inclusive. (Docket Entry 2 at 33.) "To
state a claim under [the RICO Act], a plaintiff must plead specific
facts . . . which establish the existence of an enterprise."

18

Gipson v. Deutsche Bank Nat. Trust Co., No. 3:13CV4820, 2015 WL
2069583, at *20 (N.D. Tex. May 4, 2015) (unpublished). The
Complaint, however, contains only conclusory allegations that
Defendant Nationstar Mortgage, Defendant Ace Securities, Defendant
HSBC Bank, Trustee, and Defendant John Does 1 through 100 "comprise
three distinct groups of people that together form an enterprise
within the meaning of 18 U.S.C. [S]ection 1961(4) . . . . [which]
for more than three years has been engaged in activities that
affect interstate commerce and remain[] continuous and open ended."
(Docket Entry 2 at 33.)

Courts also have held that, to state a RICO claim, "[a]
plaintiff must plead specific facts that establish that the
association exists for purposes other than to simply commit the
predicate acts." Gipson, 2015 WL 2069583, at *20. The Complaint
does not satisfy this element, as it, again, includes only
conclusory allegations that

> Defendants have devised a scheme to defraud and obtain
> money by means of fraudulent pretenses by selling or
> assigning a debt that they no longer owned [sic] to
> [Defendant Ace Securities], and then misrepresenting its
> ownership of the debt while still collecting on such
> debts in its own name without actual ownership.
>
> . . . .
>
> Defendants have attempted to extort Plaintiff by
> threatening to foreclose on the subject property of this
> action located at 6602 Lakebend Way, Greensboro, North
> Carolina, which is the primary residence of Plaintiff.
> Said threats of foreclosure to take the Plaintiff's home
> are based upon invalid and indeed illegal debt collection
> practices as fully explained above in this Petition.

> . . . Plaintiff has been forced and threatened to pay
> debts they [sic] did not owe constituting an injury to
> property within the meaning of 18 U.S.C. 1962 by actions
> of defendants and their conspirators in violation of 18
> U.S.C. section 1962(c) and (d).

(Docket Entry 2 at 33-34.)

The Complaint thus "fail[s] to allege any facts to support a reasonable inference that [] Defendants are part of an organization with a hierarchical or consensual decisionmaking structure that has an existence separate from the pattern of racketeering." Gipson, 2015 WL 2069583, at *20. As such, the Complaint does not "adequately plead a RICO enterprise." Id.

Further, "to assert a claim based on a pattern of racketeering activity, Plaintiff must plead both that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." Id. at *21 (internal quotations omitted). Here, the Complaint simply alleges in a conclusory manner that "Defendants have engaged in at least two acts of racketeering activity in interstate commerce through a pattern of racketeering activity including but not limited to mail fraud, wire fraud, bank fraud and extortion." (Docket Entry 2 at 33-34.) Moreover, the Complaint does not show how these unspecified racketeering predicates "are related and [how they] pose a threat of continued criminal activity," Gipson, 2015 WL 2069583, at *21. (See Docket Entry 2 at 33-34.)

Under the circumstances, Plaintiff's racketeering claim may not proceed.  See Brown v. Citibank, S.D., N.A., No. 5:06CV123, 2006 WL 8438793, at *2 (E.D.N.C. Oct. 25, 2006) (unpublished) (ruling that "[b]asic research by [the] plaintiff prior to filing her complaint would have revealed the[] fatal deficiencies [of her RICO claim], and holding that "*[p]ro se* litigants are still obligated to investigate that their claims have merit before filing and potentially wasting judicial resources" (italics in original)).

## C. State-Law Claims

Given the dismissal of the Complaint's federal claims (i.e., the FDCPA and RICO claims), the Court should also dismiss any related state-law claims (e.g., "unjust enrichment" (Docket Entry 2 at 1, 15), "negligent and intentional infliction of emotional distress" (id. at 1, 32), "lack of standing/wrongful foreclosure" (id. at 19), "quiet title" (id. at 22), "slander of title" (id. at 23), "fraud in the concealment" (id. at 24), "fraud in the inducement" (id. at 26), "unconscionable contract" (id. at 28), "breach of contract" (id. at 30), and "rescission" (id. at 31)). Federal courts "have original jurisdiction of all civil actions arising under the Constitution [and] laws . . . of the United States."  28 U.S.C. § 1331.[9]  "[I]n any civil action of which the

---

[9]  Federal courts also maintain "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  Under Section 1332(a), original "jurisdiction does not exist unless *each*

[federal] courts have original jurisdiction, the [federal] courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Nevertheless, a federal court "may decline to exercise supplemental jurisdiction over a claim," 28 U.S.C. § 1367(c), if it dismisses "all claims over which [it] has original jurisdiction," 28 U.S.C. § 1367(c)(3).

Here, as discussed above, Plaintiff's federal claims warrant dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii). The Court thus may appropriately decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. See Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (explaining that, pursuant to Section 1367(c)(3), "a [federal] court has discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction,'" and that "[t]here are *no* situations wherein a

_____

defendant is a citizen of a different State from *each* plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original). In this case, the Complaint identifies Plaintiff as a citizen of North Carolina (Docket Entry 2 at 2) and several Defendants as doing business in North Carolina (see id. at 2-4); however, the Complaint also provides Defendants' address information for service of process purposes, none of which include a North Carolina address (see id.). In any event, the Complaint does not purport to invoke diversity jurisdiction. (See id. at 6 (asserting that "[j]urisdiction of this Court arises under . . . [S]ection 1331 (federal question) and [S]ection 1367(a) (supplemental jurisdiction)").)

federal court *must* retain jurisdiction over a state law claim, which would not by itself support jurisdiction" (emphasis in original)).

**CONCLUSION**

The Court should dismiss this action as frivolous or, alternatively, should dismiss Plaintiff's federal claims for failure to state a claim and should decline to exercise supplemental jurisdiction over her state claims.

**IT IS THEREFORE ORDERED** that Plaintiff's Application for Leave to Proceed In Forma Pauperis (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that this action be dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) or, alternatively, that Plaintiff's federal claims be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii), and her state claims be dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 12, 2019